IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

No. 5:12-CV-190-D

| | |
|---|---|
| PAMILA ANN BRADBERRY, ) | |
| ) | |
| Claimant, ) | |
| ) | |
| ) | **MEMORANDUM AND** |
| v. ) | **RECOMMENDATION** |
| ) | |
| CAROLYN W. COLVIN, Commissioner of ) | |
| Social Security, ) | |
| ) | |
| Defendant. ) | |

This matter is before the court on the parties' cross motions for judgment on the pleadings [DE-16, DE-18] pursuant to Fed. R. Civ. P. 12(c). Claimant Pamila Bradberry ("Claimant") filed this action pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3) seeking judicial review of the denial of her application for a period of disability and Disability Insurance Benefits ("DIB"). The time for filing responsive briefs has expired and the pending motions are ripe for adjudication. Having carefully reviewed the administrative record and the motions and memoranda submitted by the parties, this court recommends denying Claimant's Motion for Judgment on the Pleadings, granting Defendant's Motion for Judgment on the Pleadings and upholding the final decision of the Commissioner.

### STATEMENT OF THE CASE

Claimant protectively filed an application for a period of disability and DIB on October 15, 2004, alleging disability beginning November 27, 2001. (R. 52). Her claim was denied initially and upon reconsideration. *Id.* A hearing before the Administrative Law Judge ("ALJ") was held on October 22, 2007, at which Claimant was represented by a non-attorney representative and a medical

expert ("ME") appeared and testified. *Id.* On November 1, 2007, the ALJ issued a decision denying Claimant's claim. (R. 52-62). On January 8, 2010, the Appeals Council remanded the claim to the ALJ for further administrative proceedings. (R. 72-73). A second administrative hearing before ALJ Hunt was held on March 31, 2010, at which Claimant was represented by a non-attorney representative, and a vocational expert ("VE") appeared and testified. (R. 17). On July 15, 2010, the ALJ issued a decision denying Claimant's claims. (R. 17-27). On March 5, 2012, the Appeals Council denied Claimant's request for review of ALJ Hunts's second administrative decision. (R. 8-10). Claimant then commenced the instant action, seeking judicial review of the now final administrative decision.

## STANDARD OF REVIEW

The scope of judicial review of a final agency decision regarding disability benefits under the Social Security Act ("Act"), 42 U.S.C. § 301 *et seq.*, is limited to determining whether substantial evidence supports the Commission's factual findings and whether the decision was reached through the application of the correct legal standards. *See Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). "The findings of the Commissioner . . . as to any fact, if supported by substantial evidence, shall be conclusive . . . ." 42 U.S.C. § 405(g). Substantial evidence is "evidence which a reasoning mind would accept as sufficient to support a particular conclusion." *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966). While substantial evidence is not a "large or considerable amount of evidence," *Pierce v. Underwood*, 487 U.S. 552, 565 (1988), it is "more than a mere scintilla . . . and somewhat less than a preponderance." *Laws*, 368 F.2d at 642. "In reviewing for substantial evidence, [the court should not] undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the Secretary." *Mastro v. Apfel*, 270 F.3d 171,

2

Case 5:12-cv-00190-D Document 23 Filed 08/06/13 Page 2 of 16

176 (4th Cir. 2001) (quoting *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996)). Rather, in conducting the "substantial evidence" inquiry, the court's review is limited to whether the ALJ analyzed the relevant evidence and sufficiently explained his or her findings and rationale in crediting the evidence. *Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439-40 (4th Cir. 1997).

## DISABILITY EVALUATION PROCESS

The disability determination is based on a five-step sequential evaluation process as set forth in 20 C.F.R. § 404.1520 under which the ALJ is to evaluate a claim:

> The claimant (1) must not be engaged in "substantial gainful activity," i.e., currently working; and (2) must have a "severe" impairment that (3) meets or exceeds [in severity] the "listings" of specified impairments, or is otherwise incapacitating to the extent that the claimant does not possess the residual functional capacity to (4) perform . . . past work or (5) any other work.

*Albright v. Comm'r of the SSA*, 174 F.3d 473, 474 n.2 (4th Cir. 1999). "If an applicant's claim fails at any step of the process, the ALJ need not advance to the subsequent steps." *Pass v. Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995). The burden of proof and production during the first four steps of the inquiry rests on the claimant. *Id.* At the fifth step, the burden shifts to the ALJ to show that other work exists in the national economy which the claimant can perform. *Id.*

When assessing the severity of mental impairments, the ALJ must do so in accordance with the "special technique" described in 20 C.F.R. § 404.1520a(b)-(c). This regulatory scheme identifies four broad functional areas in which the ALJ rates the degree of functional limitation resulting from a claimant's mental impairment(s): activities of daily living; social functioning; concentration, persistence or pace; and episodes of decompensation. *Id.* § 404.1520a(c)(3). The ALJ is required to incorporate into his written decision pertinent findings and conclusions based on the "special technique." *Id.* § 404.1520a(e)(3).

3

In this case, Claimant alleges the following errors by the ALJ: (1) improper assessment of Claimant's credibility and (2) improper assessment of Claimant's capacity to perform past relevant work. Pl.'s Mem. Supp. Pl.'s Mot. J. Pleadings ("Pl.'s Mem.") at 3.

## FACTUAL HISTORY

### I.    ALJ's Findings

Applying the above-described sequential evaluation process, the ALJ found Claimant "not disabled" as defined in the Act. At step one, the ALJ found Claimant was no longer engaged in substantial gainful employment during the period from her alleged onset date of November 27, 2001 through her date last insured of December 31, 2006. (R. 19). Next, the ALJ determined Claimant had the following severe impairments: status post total thyroidectomy for Hurthle cell cancer, hypothyroidism with past surgery, history of hyperthyroidism, hyperlipidemia, borderline hypertension, history of diabetes mellitus, history of back pain, history of gastroesophageal reflux disease (GERD) and history of glaucoma. *Id.* The ALJ also found Claimant had a non-severe impairment of depression. *Id.* Applying the technique prescribed by the regulations, the ALJ found that Claimant's non-severe mental impairment of depression resulted in no limitations in her activities of daily living, social functioning and concentration, persistence and pace with no episodes of decompensation. (R. 20). However, at step three, the ALJ concluded these impairments were not severe enough, either individually or in combination, to meet or medically equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. 21).

Prior to proceeding to step four, the ALJ assessed Claimant's RFC, finding Claimant had the ability to perform light work[1] with visual restrictions. (R. 21). In making this assessment, the ALJ

---

[1] Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this

4

found Claimant's statements about her limitations not fully credible to the extent they are inconsistent with the RFC. (R. 24-25). At step four, the ALJ concluded Claimant had the RFC to perform the requirements of her past relevant work as an electrical assembler and presser feeder. (R. 26). In making this finding, the ALJ relied on the testimony of the VE at the February 2010 hearing. *Id.* Despite the ALJ's finding at step four that Claimant is not disabled, the ALJ made the alternative finding at step five that there also existed other work in significant numbers in the national economy that Claimant was capable of performing, including that of cashier, fast food worker, and cleaner housekeeping. (R. 26-27). The ALJ again relied on the testimony of the VE in making this step five determination. (R. 27). The ALJ concluded that plaintiff was not under a disability at any time from the alleged onset of disability through her last date insured. (R. 27).

## II. Claimant's Testimony at the Administrative Hearing

At the time of Claimant's administrative hearing, Claimant was 51 years old and unemployed. (R. 764, 766). Claimant is a high school graduate and was last employed with Wilson Medical Center in Wilson, North Carolina for approximately one year, where her duties included working as a certified nursing aid. (R. 764, 767). Claimant was fired from her employment with Wilson Medical Center for leaving a patient unattended. (R. 767). Claimant's past work experience also includes working in nursing home facilities, working as a machine operator for presser

---

category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, an individual must have the ability to do substantially all of these activities. If an individual can perform light work, he or she can also perform sedentary work, unless there are additional limiting factors such as the loss of fine dexterity or the inability to sit for long periods of time. 20 C.F.R. § 404.1567(b).

5

machines, and wiring electrical boxes.[2] (R. 767-69).

Claimant explained numerous medical conditions support her disability claim and her inability to work full-time. These medical conditions include thyroid problems, high blood pressure, muscle spasms, glaucoma in her eyes, and diabetes. (R. 769-70). Claimant testified her eyesight began to deteriorate in 2006, that she had high pressure in both eyes, and was diagnosed with glaucoma. (R. 771). Specifically, Claimant testified that she experienced blurred and double vision and saw black spots in her field of vision. (R. 772). Claimant testified her vision difficulties prevented her from cooking. (R. 773). Claimant testified that she was treated for her glaucoma by a physician at Duke University and continues treatment with him currently with appointments every three months. (R. 772). Claimant testified that she underwent surgery for her glaucoma. (R. 770). Claimant is currently taking Prednisone for her glaucoma three days each week with other glaucoma medications taken daily. (R. 773).

Claimant testified that her thyroid was surgically removed and that she underwent a series of radiation treatments on her thyroid for suspicious cells that appeared cancerous. (R. 770). Claimant testified she is currently on medication for her thyroid. (R. 774). Claimant testified she is tired and does not have much energy. (R. 774-75). Claimant testified that she started experiencing neck muscle spasms in 2005 which occur when she turns her neck to the right, as well as other spasms in her legs and feet when she starts stretching them. (R. 771). Claimant testified she began taking insulin in 2007 for her diabetes, but that her diabetes is generally uncontrolled. (R. 772-73). Claimant testified that in December 2006 (at the time of her insured status) she was able to lift about

---

[2] The court's review of the record informs the court that Claimant's employment with General Cable was in assembling electrical wire boxes, not acquiring "wine" boxes as stated in the hearing transcript. (R. 768-69). No party disputes this characterization of the testimony.

6

20 pounds, could only stand for 10-15 minutes before cramping and aching began in her legs, and was able to use her hands. (R. 777-78). Claimant testified she does not remember if she was able to do laundry in 2006, but that she is able to do more now than she could in 2006. (R. 779). Claimant testified she also experienced depression in 2006 and was on medication, but does not remember the type of medication. (R. 779). Claimant testified that she is unable to work due to her poor eyesight and problems with cramping, pain, and diabetes. (R. 776-77, 779).

### III. Vocational Expert's Testimony at the Administrative Hearing

Julie Sawyer-Little testified as a VE at the administrative hearing. (R. 782). The VE first testified about Claimant's past relevant work. The VE listed Claimant's past relevant work as follows: (1) nurse assistant (DOT# 355.674-014) at medium work with SVP of four; (2) electical assembler (DOT# 729.687-010) at light work with SVP of two; and (3) presser feeder (DOT# 583.686-030) at light work with SVP of two. *Id.* The ALJ proceeded to ask the VE whether jobs with an SVP of two would entail simple, routine, repetitive tasks. *Id.* The VE responded in the affirmative. *Id.* Next, the ALJ asked the VE to assume a hypothetical individual of the same age, education and prior work experience as Claimant and posed a hypothetical question. The ALJ asked what jobs would be available for the hypothetical individual assuming she could perform light work with the limitation of defined, detail-type work and the capacity to perform work involving simple, routine and repetitive tasks. (R. 783). The VE responded that the following jobs would be available to the hypothetical individual: (1) cashier (DOT# 211.462-010), (2) fast food worker (DOT# 311.472-010), and (3) cleaner housekeeping (DOT# 323.687-014). (R. 783).

7

# DISCUSSION

## I. The ALJ properly assessed Claimant's credibility.

Claimant contends the ALJ erred in his credibility determination. Pl.'s Mem. at 12. This court disagrees.

Federal regulation, 20 C.F.R. § 404.1529(a), provides the authoritative standard for the evaluation of subjective complaints of pain and symptomology. *See Craig*, 76 F.3d at 593. Under this regulation, "the determination of whether a person is disabled by pain or other symptoms is a two-step process." *Id.* at 594. First, as an objective matter, the ALJ must determine whether Claimant has a medical impairment which could reasonably be expected to produce the pain or other symptoms alleged. *Id.*; *see also* S.S.R. 96-7p, 1996 SSR LEXIS 4, at *5, 1996 WL 374186, at *2. If this threshold question is satisfied, then the ALJ evaluates the actual intensity and persistence of that pain, and the extent to which it affects a claimant's ability to work. *Id.* at 595. The step two inquiry considers "all available evidence," including a claimant's statements about her pain, medical history, medical signs, laboratory findings, any objective medical evidence of pain, evidence of a claimant's daily activities, specific descriptions of pain, any medical treatment taken to alleviate the pain and "any other evidence relevant to the severity of the impairment." *Craig*, 76 F.3d at 595; *see also* 20 C.F.R. § 404.1529(c)(3); S.S.R. 96-7p, 1996 SSR LEXIS 4, at *6, 1996 WL 374186, at *3. The ALJ may not discredit a claimant solely because her subjective complaints are not substantiated by objective medical evidence. *Craig*, 76 F.3d at 595-96. However, neither is the ALJ obligated to accept the claimant's statements at face value; rather, the ALJ "must make a finding on the credibility of the individual's statements based on a consideration of the entire case record." S.S.R. 96-7p, 1996 SSR LEXIS 4, at *6, 1996 WL 374186, at *3. Objective evidence of pain is not

required for entitlement to benefits, although it is appropriately considered where it appears in the record. *See Craig*, 76 F.3d at 595-96.

By all accounts, the ALJ performed this analysis as prescribed. (R. 24-25). Claimant does not contend otherwise, but complains that the ALJ's reasons for discrediting Claimant's subjective complaints are not sufficient and, in some instances, simply inaccurate because Claimant's testimony is consistent with the record as a whole. Pl.'s Mem. at 12. Claimant primarily contends the ALJ failed to take account of her physical limitations stemming from her glaucoma and hypothyroidism. Here, the ALJ found that Claimant's medically determinable impairments could be expected to cause the symptoms Claimant alleges, but that her allegations as to the intensity, persistence, and limiting effects of these symptoms were not credible. (R. 24). Despite Claimant's contention, the ALJ cited medical evidence throughout the record in support of his finding that Claimant's thyroid problems and glaucoma were not disabling.

As for Claimant's thyroid condition, the ALJ stated that Claimant's hypothyroidism is stable under medication and that her thyroid cancer is in remission. (R. 25). The ALJ noted the following in his opinion: (1) the Claimant was not compliant in taking the medication for her thyroid condition with medical records showing non-compliance in January 2002, April 2002, and April 2003 (R. 23, 261, 263, 265); (2) upon being diagnosed with hypothyroidism in 2004 and being prescribed Synthroid, Claimant reported that she was doing well overall and had improved energy (R. 23, 364, 367); (3) Claimant had increased TSH levels in January 2005, but reported taking her thyroid medication with orange juice, lessening its effectiveness (R. 23, 425); (4) Claimant reported in July 2006 that she had not taken her thyroid medication for the preceding four months (R. 23-24, 566, 569); (5) Claimant underwent a thyroidectomy in November 2006 due to the presence of a Hurthle

9

cell neoplasm which was followed by radiation (R. 24, 529); (6) a full-body scan showed no evidence of metastatic disease (R. 24, 549); (7) post-surgery visits in March 2007 and July 2007 showed Claimant doing well with some mild fatigue[3] (R. 24, 595, 632); and (8) primary care records through March 2008 indicate Claimant's thyroid condition was stable (R. 24, 556, 595, 632, 635, 638, 698, 704, 708, 710, 712, 718).[4] The ALJ also provided a summary of Claimant's testimony at the hearing concerning her medical conditions and alleged limitations. (R. 22).

In an attempt to refute the ALJ's finding that Claimant's hypothyroidism is well-controlled with medication, Claimant cites her testimony during the March 2010 hearing where she stated she is fatigued due to her thyroid problem and argues this "prevents her from performing work on a sustained and continuous basis." Pl.'s Mem. at 11. However, Claimant fails to cite any medical evidence in the record in support of her argument. Claimant essentially contends that this court ought to re-weigh the evidence and find that Claimant's testimony is "entitled to great weight." Pl.' Mem. at 12. While Claimant may disagree with the manner in which the ALJ took account of this evidence, this court cannot re-weigh the evidence. *See Mastro*, 270 F.3d at 176. The ALJ's credibility determination is based on consideration of the entire case record and the ALJ has given sufficient reasons in support of his credibility determination. Therefore, it is evident that the ALJ's finding that Claimant's hypothyroidism is controlled by medication is supported by substantial evidence.

---

[3] Medical evidence generated subsequent to Claimant's date last insured ("DLI") may be relevant to a disability determination where the evidence relates back to the Claimant's limitations prior to the DLI and may be properly considered by the ALJ. *See Wooldridge v. Bowen*, 816 F.2d 157, 160 (4th Cir. 1987).

[4] Duplicates to these records appear at the following pages in the record: 663, 669, 716, 720.

10

Second, Claimant objects to the ALJ's credibility determination with respect to her glaucoma by contending the ALJ erred by not fully crediting her allegations that she cannot work due to vision problems. Pl.'s Mem. at 11-12. Claimant once again fails to cite to any evidence in support of her contention and merely relies on her hearing testimony regarding her glaucoma without providing the court with a developed argument. Regarding Claimant's glaucoma, the ALJ stated that Claimant's glaucoma is not well controlled and that her visual acuity is compromised. (R. 25). The ALJ thereafter found that these visual limitations would restrict her from working on fine, detailed tasks. (R. 25). Despite Claimant's argument, the ALJ obviously deemed Claimant's testimony credible to a certain degree in light of his finding that Claimant is restricted from performing detailed tasks due to visual restrictions. However, Claimant contends the ALJ should have found her visual limitations prevented her working altogether. The ALJ cited the following in support of his finding as to Claimant's visual limitations: (1) Claimant was diagnosed with glaucoma in both eyes in 2003 and prescribed eye drop medication (R. 24, 260-61); (2) at Claimant's physical consult exam in May 2003, Claimant had 20/30 vision in both eyes (R. 24, 254); (3) medical records in late 2004 showed that Claimant had not received a good response from her medications, but was noncompliant in her usage (R. 24, 301, 304); (4) in December 2004 Claimant had 20/60 vision in both eyes and elevated pressures (R. 24, 375); (5) Claimant had 20/60 vision in her right eye and 20/50 vision in her left eye in February 2005 (R. 24, 411); (6) Claimant's visual field was normal in February 2005 (R. 24, 411); (7) Claimant underwent a tube placement surgery in her left eye on February 24, 2005 without complication and post-op appointments showed decreased pressure (R. 24, 413-14); (8) Claimant lapsed in her glaucoma treatment with Duke Eye Center until August 2006 (R. 24, 520); (9) Claimant underwent a tube placement surgery in her right eye on August 10, 2006 which decreased

11

her eye pressure (R. 24, 516); and (10) Claimant failed to attend a follow-up appointment on November 2006 (R. 24, 512).

Claimant essentially contends that this court should re-weigh the evidence and find that Claimant's testimony as to her glaucoma is "entitled to great weight." Pl.' Mem. at 12. While Claimant may disagree with the manner in which the ALJ took account of this evidence, this court cannot re-weigh the evidence. *See Mastro*, 270 F.3d at 176. The ALJ's credibility determination is based on consideration of the entire case record and the ALJ has given sufficient reasons in support of his credibility determination regarding Claimant's vision. Therefore, it is evident that the ALJ's finding that Claimant's glaucoma only prevents her from performing fine, detailed tasks is supported by substantial evidence.

Claimant also briefly objects to the ALJ's credibility determination by contending the ALJ should have credited her testimony that she had problems lifting. Pl.'s Mem. at 11. At the February 2010 hearing, Claimant testified that in December 2006 (at the time of her insured status) she was able to lift approximately 20 pounds; Claimant testified that since that time she can lift no more than 10-15 pounds. (R. 776-77). The ALJ found that Claimant had the ability to perform light work which includes the ability to lift and/or carry 10 pounds frequently and 20 pounds occasionally. (R. 21). The RFC is fully compatible with the lifting limitations that Claimant testified to at the hearing. The ALJ also considered Dr. Bullard's May 2003 examination of Plaintiff wherein he estimated Plaintiff could lift up to 25 pounds, but accorded this opinion limited weight given the longitudinal objective record. (R. 25, 255). Thus, the ALJ found Claimant's testimony regarding her lifting ability credible and Claimant's argument is without merit.

12

It is within the ALJ's province to determine credibility and, in fulfilling that function, the ALJ is entitled to consider inconsistencies between a claimant's testimony and the evidence of record. *See Mickles v. Shalala*, 29 F.3d 918, 929 (4th Cir. 1994) ("Subject only to the substantial evidence requirement, it is the province of the [ALJ], and not the courts, to make credibility determinations."). To the extent that the ALJ detailed the relevant facts underlying his finding that Claimant's testimony was not fully credible, his credibility finding is entitled to substantial deference. *See Shively v. Heckler*, 739 F.2d 987, 989 (4th Cir. 1984) (noting an ALJ's observations regarding credibility should be given great weight). Here, the ALJ comported fully with the credibility evaluation prescribed by SSR 96-7p by making findings, supported by reasons, with respect to Claimant's alleged symptoms, the medical record and Claimant's own testimony. The ALJ's decision spans three singled-spaced pages, is replete with citations to the record and carefully analyzes Claimant's work-related abilities. For the foregoing reasons, Claimant's argument as to this issue is without merit.

## II.    The ALJ's determination at step four does not require remand.

Claimant contends the ALJ erred in relying on the testimony of the VE in finding Claimant could perform her past relevant work because the ALJ failed to question the VE on whether Claimant's past relevant work exceeded the visual restrictions contained in the RFC. Pl.'s Mem. at 9.

Here, the ALJ found that Claimant had the RFC to perform light work with visual restrictions, specifically that Claimant could not engage in fine, detailed work. (R. 21). The ALJ also found that Claimant's past relevant work included employment as an electrical assembler and presser feeder. (R. 26). At the February 2010 hearing, the ALJ questioned the VE about the strength

13

requirements and skill levels of Claimant's past relevant work. (R. 782). The VE testified that the jobs of both electrical assembler and presser feeder require light exertion and carry an SVP of 2, meaning simple, routine, repetitive tasks. (R. 732). However, the record shows the ALJ did not specifically question the VE and the VE offered no testimony as to whether Claimant is capable of performing her past relevant work with the visual restrictions for fine, detailed work. Although the ALJ concluded Claimant retained the capacity to perform these jobs, he did not specifically address the visual limitations with the VE. Claimant contends that the ALJ erred by failing to elicit such explanation from the VE thereby making the record unclear as to whether Claimant's past jobs exceeded her visual restrictions. Pl.'s Mem. at 9.

The court acknowledges that the absence of VE testimony on this matter is notable. However, the court need not determine whether the ALJ's reliance on the VE's testimony as to Claimant's past relevant work was supported by substantial evidence because the ALJ proceeded to conduct, in the alternative, the analysis at step five which reaches the same conclusion that Claimant is not disabled. *See Benefiel v. Astrue*, No. 7:11-CV-82-D, 2012 WL 3000186, at *10 (E.D.N.C. May 31, 2012), *adopted by* 2012 WL 2992722 (E.D.N.C. July 20, 2012) (concluding that even if there was error at step four, the ALJ's alternative disposition at step five was supported by substantial evidence); *see also Murrell v. Shalala*, 43 F.3d 1388, 1389 (10th Cir. 1994) (holding that alternative dispositions are not legally improper under the sequential evaluation process and that "the use of alternative dispositions generally benefits everyone"). The purpose of a VE is "to assist the ALJ in determining whether there is work available in the national economy which this particular claimant can perform." *Walker v. Bowen*, 880 F.2d 47, 40 (4th Cir. 1989). As such, hypothetical questions posed to the VE must accurately set forth all of a claimant's physical and mental

14

impairments. *Id.* "Testimony elicited by hypothetical questions that do not relate with precision all of a claimant's impairments cannot constitute substantial evidence to support the Secretary's decision." *Pratt v. Sullivan*, 956 F.2d 830, 836 (8th Cir. 1992). The corollary to this rule is that the ALJ need only include in his questioning those impairments which the ALJ has found to be credible. *Ehrhart v. Sec'y, Health & Human Servs.*, 969 F.2d 534, 540 (7th Cir. 1992).

With respect to step five, the ALJ specifically questioned the VE about work available in the national economy for a hypothetical individual such as Claimant having an RFC of light work with visual restrictions in performing fine, detailed work. (R. 732-33). The hypothetical posed to the VE incorporated Claimant's RFC as determined by the ALJ and the ALJ precisely set out Claimant's individual physical impairments. It is clear that the ALJ adequately communicated to the VE Claimant's visual restrictions with respect to fine, detailed work. Claimant has not specifically challenged the ALJ's finding at step five. However, since the ALJ's step five finding is, by itself, a sufficient basis for the denial of benefits, Claimant's success on appeal is foreclosed regardless of any merit as to her argument relating to step four.[5] Accordingly, Claimant's argument as to error at step four is without merit.

## CONCLUSION

For the reasons stated above, this court RECOMMENDS Claimant's Motion for Judgment on the Pleadings [DE-16] be DENIED, Defendant's Motion for Judgment on the Pleadings [DE-18] be GRANTED and the final decision of the Commissioner be UPHELD.

---

[5] Claimant also asserts that remand is required because the July 2010 ALJ decision before this court for review lists past relevant work not included in the ALJ's first decision which was remanded by the Appeals Council. Pl.'s Mem. at 8. However, the court need not address Claimant's argument as to this issue for the same reason – the ALJ's alternative disposition at step five is supported by substantial evidence.

15

The Clerk shall send copies of this Memorandum and Recommendation to counsel for the respective parties, who have fourteen (14) days upon receipt to file written objections. Failure to file timely written objections shall bar an aggrieved party from receiving a de novo review by the District Court on an issue covered in the Memorandum and Recommendation and, except upon grounds of plain error, from attacking on appeal the proposed factual findings and legal conclusions not objected to, and accepted by, the District Court.

Submitted, this the 6th day of August, 2013.

Robert B. Jones, Jr.
United States Magistrate Judge